UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS JOSEPH RAIMONDO, ET AL., <br> Plaintiffs, <br> v. <br> FEDERAL BUREAU OF INVESTIGATION, <br> Defendant. | Case No.13-cv-02295-JSC <br><br> **ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT** <br><br> Re: Dkt. Nos. 114, 117 |

Plaintiffs Dennis Raimondo and Eric Garris filed this Freedom of Information Act ("FOIA") and Privacy Act action against Defendant the Federal Bureau of Investigation ("FBI") in 2013. Plaintiffs sought records regarding a 2004 threat assessment the FBI conducted of a website, Antiwar.com, with which the Plaintiffs are affiliated, and related investigations that the FBI conducted of Plaintiffs. Plaintiffs also sought expungement of certain records related to the exercise of their First Amendment rights, and Plaintiff Garris sought expungement of a record that contains inaccurate information.

In May 2016, the Court granted the FBI's motion for summary judgment as to the Privacy Act claims and denied both parties' motions for summary judgment as to the FOIA claims. (Dkt. No. 90.) The FBI then produced a second *Vaughn* index as well as certain documents which had either been produced in more redacted form previously or not produced at all. Shortly thereafter, the parties stipulated to dismissal of the FOIA claims. (Dkt. No. 101.) Plaintiffs also filed a motion for reconsideration of the Court's summary judgment order as to their Privacy Act claims based on recently produced documents. The Court granted the motion in part and denied it in part, allowing Plaintiffs to raise Privacy Act claims with respect to two documents produced in less redacted form following the Court's summary judgment order. (Dkt. No. 111.) The parties'

cross-motions for summary judgment regarding these documents are now pending before the Court. (Dkt. Nos. 114 & 117.) Having considered the parties' briefs and having had the benefit of oral argument on January 11, 2018, the Court GRANTS the FBI's motion for summary judgment and DENIES Plaintiffs' cross-motion.

## BACKGROUND

The Court's prior summary judgment order summarized the factual record in detail. (Dkt. No. 90.) Because the factual record is largely unchanged, the Court incorporates the recitation of the facts and procedural background from that order by reference and only addresses the developments following the order.

As part of the meet and confer process following the first round of summary judgment briefing, Plaintiffs identified 34 documents as having been improperly withheld in whole or in part pursuant to certain FOIA exemptions. (Dkt. No. 95.) Thereafter, the FBI produced a second supplemental *Vaughn* index and reproduced documents with fewer redactions than previously provided, including documents that had previously been withheld in full. (Dkt. No. 102-1.) As relevant here, among these documents were (1) a November 28, 2006 FBI memorandum ("November 2006 Memo") which includes a reference to an article published on Antiwar.com; and (2) an April 5, 2006 FBI memorandum ("April 2006 Memo") which lists Antiwar.com as a website that publicly posted details regarding an upcoming Halliburton shareholder meeting. (Dkt. No. 102-1 at 52-57.) The FBI had previously produced a more heavily redacted version of the April 2006 Memo on November 18, 2013 and had listed the November 2006 Memo on its November 12, 2015 Vaughn index as withheld in full pursuant to certain FOIA exemptions. (Dkt. No. 114-3 at ¶ 2; Dkt. No. 71 at 70.[1])

Upon receipt of these documents, Plaintiffs filed a motion for reconsideration arguing that (1) recently produced documents undermined the FBI's explanation for the threat assessment memorialized in the April 30, 2004 memorandum which had formed the crux of Plaintiff's Privacy Act claims, and (2) that the November 2006 Memo and the April 2006 Memo gave rise to

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

1  additional Privacy Act claims. (Dkt. No. 102.) The Court rejected the first basis for
2  reconsideration, but concluded that Plaintiffs' Privacy Act claims were pled sufficiently broad to
3  encompass these two additional documents. (Dkt. No. 111.) The parties were directed to meet
4  and confer regarding a briefing schedule as to these additional documents, which they did, and
5  now those motions are fully briefed. Plaintiffs have withdrawn any claim with respect to the
6  November 2006 Memo; thus only the April 2006 memo is at issue. (Dkt. No. 117 at 7 n.1.)

**THE APRIL 2006 MEMO**

The April 2006 Memo provides "[i]nformation regarding annual Halliburton Shareholders' Meeting at Duncan, Oklahoma, May 15-17, 2006." (Dkt. No. 114-1 at 6.) The memo states that the annual shareholder meeting has been "targeted by multiple organized protest groups." (*Id*.) It includes a summary of Halliburton's business and notes that "Dick Cheney served as Halliburton's Chief Executive Officer prior to becoming Vice President of the United States." (*Id*. at 7.) The memo also details the logistics for the meeting including that it will begin with four jets with VIPs arriving at the Duncan Municipal Airport at 4:00 p.m. on Monday, May 15, 2006, and that these individuals will be escorted to the Chisholm Suite Hotel in a Duncan Police Department motorcade. (*Id*.) It then goes on to review other logistics for the meeting and associated events including locations and number of guests. (*Id*.) The only reference to Antiwar.com is contained at the end of the memorandum. As reflected in the below excerpt, Antiwar.com is one of 11 websites listed which was identified by a third-party as having posted information regarding the shareholders' meeting:

```
(U) The following web sites were provided by [     ]
[        ] According to [        ] all of these sites have
posted information regarding the shareholders' meeting at Duncan:

        http://www.codepink4peace.org/
        www.globalexchange.org
        www.iconoclast-texas.com
        http://houston.indymedia.org/
        www.houstonglobalawareness.org
        http://www.halliburtonwatch.org/
        www.antiwar.com
        www.corpwatch.org
        www.motherjones.com
        http://unitedforpeace.org
        http://antiwarfair.com
```

(*Id*.)

**DISCUSSION**

The question before the Court is narrow: whether the FBI has violated Section (e)(7) of the Privacy Act through its maintenance of the April 2006 Memo. The Privacy Act of 1974 "safeguards the public from unwarranted collection, maintenance, use and dissemination of personal information contained in agency records . . . by allowing an individual to participate in ensuring that his records are accurate and properly used." *Henke v. U.S. Dep't of Commerce*, 83 F.3d 1453, 1456 (D.C. Cir. 1996) (internal citation and quotation marks omitted). "The Act gives agencies detailed instructions for managing their records and provides for various sorts of civil relief to individuals aggrieved by failures on the Government's part to comply with the requirements." *Doe v. Chao*, 540 U.S. 614, 618 (2004).

Section 552a(e)(7) of the Act provides that a federal agency may not "maintain [any] record describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute or by the individual about whom the record is maintained or unless pertinent to and within the scope of an authorized law enforcement activity." 5 U.S.C. § 552a(e)(7). "The purpose of the section (e)(7) First Amendment protection is to prevent collection of protected information not immediately needed, about law-abiding Americans, on the off-chance that Government or the particular agency might possibly have to deal with them in the future." *MacPherson v. I.R.S.*, 803 F.2d 479, 483 (9th Cir. 1986) (quoting S. Rep. 1183, 93d Cong., 2d Sess., reprinted in 1974 U.S. Code Cong. & Admin. News 6916, 6971). The government bears the initial burden of demonstrating that the law enforcement activity exception to the Privacy Act applies. *See Afifi v. Lynch*, 101 F. Supp. 3d 90, 107 (D.D.C. 2015) (requiring defendants to demonstrate that the records of the plaintiff's First Amendment activities complied with Section (e)(7) of the Privacy Act); *see also Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009)(noting that the burden is on the government in both FOIA and Privacy Act cases to demonstrate that it acted in accordance with the applicable statute).

In *MacPherson*, the Ninth Circuit recognized that "[t]here are strong policy considerations on both sides of the issue" of whether to allow law enforcement to maintain records of an individual's First Amendment conduct. 803 F.2d at 483. On the one hand, "[t]he mere

compilation by the government of records describing the exercise of First Amendment freedoms creates the possibility that those records will be used to the speaker's detriment, and hence has a chilling effect on such exercise." *Id.* at 484 (internal quotation marks and citation omitted). "Blanket allowance of [] incidental surveillance and recording under the guise of general investigation could permit the exception to swallow the rule." *Id.* (internal quotation marks omitted). On the other hand, "the legitimate investigation and surveillance of suspected criminals and civil offenders inevitably involves observation and recording of the actions of innocent people, sometimes when those people are exercising their First Amendment rights." *Id.* "To forbid 'incidental' surveillance of innocent people or to require excision of references to such people in surveillance records would be administratively cumbersome and damaging to the completeness and accuracy of the agency records." *Id.* Indeed, the very presence of the law enforcement exception "recognizes that some recording of First Amendment activities will take place." *Id.* Thus, *McPherson* concluded, when determining whether the section 552a(e)(7) law enforcement activity exception applies, a court must "consider the factors for and against the maintenance of such records of First Amendment activities on an individual, case-by-case basis." *Id.*

Plaintiffs contend that the FBI's maintenance of the April 2006 Memo, and in particular the reference to Antiwar.com, violates Section (e)(7) of the Privacy Act. The FBI moves for summary judgment on the grounds that no reasonable trier of fact could find that the memo's reference to Antiwar.com was not within the scope of authorized law enforcement activity. Or, to put it another way, that every reasonable trier of fact would have to find that that the reference was within the scope of authorized law enforcement activity and therefore the FBI's maintenance of the memo does not violate the Privacy Act. *See Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987, 989 (9th Cir. 2016) (the usual summary judgment standard applies to FOIA cases).

According to the declaration of Agent Bujanda, the Assistant Special Agent in Charge ("ASAC") for National Security, a field office, such as the Oklahoma Field Office which prepared the April 2006 Memo, is responsible for "maintaining 'domain awareness' in its area-of

responsibility" which includes "'strategic understanding of national security and criminal threats and vulnerabilities that exist in the domain.'" (Dkt. No. 114-1 at ¶ 4 (quoting from the FBI Domestic Investigations and Operations Guide, Section 15 (attached at Dkt. No. 114-1 at 12)).) "[T]o prepare for events that present potential security concerns in the field office's geographical [area of responsibility], the FBI and local law enforcement coordinate and advise one another of their advance preparations." (*Id.* at ¶ 4.) "The April 2006 EC documents information the FBI received regarding a potential security and public safety concern surrounding an upcoming event in the OC Field Office's geographic [area of concern] – the annual Haliburton shareholder's meeting to be held in Duncan, Oklahoma in May 2006—and the steps taken by the FBI and local law enforcement to prepare for that event." (*Id.* ¶ 5.) "[P]rior to 2006, FBI agents and local law enforcement had observed public safety concerns at Halliburton annual shareholders' meetings, and that activity at the protests resulted in multiple arrests." *(Id.* at ¶ 6.) The April 2006 Memo thus represents the FBI's collaboration with local law enforcement to prepare for public safety concerns arising out of the annual Halliburton shareholder's meeting. (*Id.* at ¶ 7.) Agent Bujanda explains that identifying the websites that had information regarding the proposed protests "conveys the level of public awareness of the event." (*Id.* at ¶ 8.)

The "ensuring public safety" nature of the memo is further evidenced by the memorandum itself. First, the "synopsis" of the memo is identified as "Information regarding annual Halliburton Shareholders' Meeting at Duncan, Oklahoma, May 15-17, 2006," supporting an inference that the memo was prepared regarding the meeting rather than to document First Amendment activities of persons or organizations reporting on the meeting or the planned protests. Second, the "Details" section of the memorandum provides specific details about the meeting itself and related events, including details as to the location, timing and number of expected guests—information relevant to ensuring public safety and not relevant to simply recording or monitoring the First Amendment activities of Antiwar.com. Third, the memo recites only that certain websites provided information regarding the shareholders' meeting and nothing more; it does not discuss the content of the information or any other information that suggests the memo was not created for a law enforcement purpose.

6

Plaintiffs first respond that the Court cannot consider Agent Bujanda's declaration because (1) he lacks personal knowledge regarding the April 2006 Memo since he was not stationed in Oklahoma City at the time the Memo was prepared, and (2) the statements in the memo are hearsay.

The FBI counters that personal knowledge can come from review of the contents of agency files and records and that as the Assistant Special Agent In Charge of the Oklahoma City Field Office Bujanda has knowledge to testify regarding: (1) the Field Office's responsibilities as they relate to domain awareness, (2) the Field Office's geographical area of responsibility, (3) threats and vulnerabilities that exist in the Field Office's area of responsibility, (4) events that raise public safety concerns within the Field Office's area of responsibility, (5) the Field Office's efforts to ensure that appropriate preparations are in place for such events including the process for memorializing those efforts, and (6) the relevance of the information documented in the April 2006 Memo to ongoing and future FBI activity. The FBI emphasizes that in FOIA cases "[a]n affidavit from an agency employee responsible for supervising a FOIA search is all that is needed to satisfy the personal knowledge requirement of Federal Rule of Civil Procedure 56(e)." *Lahr v. National Transp. Safety Bd.*, 569 F.3d 964, 989 (9th Cir. 2009). Thus, courts routinely deny hearsay and lack of personal knowledge objections in FOIA cases based on agency affidavits similar to those submitted here. *See, e.g.*, *Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*, No. 14-1130 SC, 2015 WL 6331268, at *2 (N.D. Cal. Oct. 21, 2015) (overruling hearsay and personal knowledge objections with respect to a declaration submitted by the agency's San Francisco Branch Chief); *Hersh & Hersh v. U.S. Dep't of Health & Human Servs.*, No. C 06-4234, 2008 WL 901539, at *4 (N.D. Cal. Mar. 31, 2008) (same with respect to a declaration submitted by the Health and Human Services FOIA officer). Indeed, this Court overruled similar objections from Plaintiffs with regards to the prior motions for summary judgment on the FOIA and Privacy Act claims.

While there is some similarity between FOIA and Privacy Act claims, the purpose of the declaration in a Privacy Act action is different. In a Privacy Act action such as this the declaration is relied upon to establish the purpose for the historical document and not just the methodology of

7

a recent search for documents.  Under these circumstances, Plaintiffs' lack of personal knowledge and hearsay objections to the declaration cannot simply be denied out of hand.

Federal Rule of Civil Procedure 56(e) requires that affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e).  Here, Agent Bujanda attests that his knowledge is based on his "experience, review of information provided to me in the course of my official duties, including the April 2006 EC, and my personal knowledge." (Dkt. No. 114-1 at ¶ 3.)  Plaintiffs insist that this is insufficient to establish personal knowledge regarding why the April 2006 Memo was created or the underlying activities relying on *Block v. City of Los Angeles*, 253 F.3d 410, 419 (9th Cir. 2001), a Fair Labor Standards Act case, which rejected a declaration regarding disciplinary suspensions when the supervisor affiant lacked an personal involvement in the suspensions.

The Court disagrees.  Unlike in *Block*, Agent Bujada's position as the ASAC of the Oklahoma City Field Office provides him with institutional knowledge regarding the responsibilities and investigatory activities of the field office.  In particular, he has personal knowledge to testify regarding the fact that "to prepare for events that present potential security concerns in the field office's [geographic area of responsibility], the FBI and local law enforcement coordinate and advise one another of their advance preparations." (Dkt. No. 1114-1 at ¶ 4.)  Rule 602 states that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602; *see also Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990) (concluding that the affiants' "personal knowledge and competence to testify are reasonably inferred from their positions and the nature of their participation in the matters to which they swore").[2]  Given his position at the Oklahoma City Field Office, Agent Bujanda has adequate

---

[2] Plaintiffs' reliance on *Londrigan v. Fed. Bureau of Investigation*, 670 F.2d 1164, 1174 (D.C. Cir. 1981), is equally unavailing. The court there noted that the agent would have been competent to testify, as relevant here, about "the agency's procedures with respect to investigations during his own tenure therewith and earlier practices of which he possesses personal knowledge; and his personal experiences as an agent to the extent that they bore relevance to the case." *Id*. at 1174. So too here—Agent Bujanda has personal knowledge to talk about the Oklahoma City Field

8

personal knowledge to testify regarding *why* a memo such as the April 2006 Memo would have been prepared.

However, to the extent that the declaration references statements made by FBI agents regarding prior protests and arrests made at prior protests, these statements are hearsay. *See* Fed. R. Evd. 801(c). Hearsay is inadmissible unless a federal statute, the Rules of Civil Procedure, or other rules prescribed by the Supreme Court provide otherwise. *See* Fed. R. Evd. 802. However, "at summary judgment a district court may consider hearsay evidence submitted in an inadmissible form, so long as the underlying evidence could be provided in an admissible form at trial, such as by live testimony." *JL Beverage Co., LLC v. Jim Beam Brands Co*., 828 F.3d 1098, 1110 (9th Cir. 2016). Thus, even if the statement in the declaration that Agent Bujanda was "informed" about public safety concerns at prior Halliburton shareholder meetings and that arrests were made at protests surrounding the meetings is hearsay, the FBI could offer the facts underlying the declaration in an admissible form at trial, for instance, through direct testimony of one of the FBI agents involved in the prior protests. At oral argument, the FBI affirmed that they would be able to offer such testimony at trial. Accordingly, the Court overrules Plaintiffs' hearsay objection to the Bujanda declaration as well.

Next, Plaintiffs concede that the April 2006 Memo reflects law enforcement activity, but nonetheless insist that the FBI was not authorized to identify and record the websites that referenced the Halliburton meeting.[3] Plaintiffs argue that to find otherwise would suggest that the FBI has a "blank check to take *any* measures to prepare for events where protest activity it

---

Office's practices and procedures. Likewise, the affiant in *Bright v. Ashcroft*, 259 F. Supp. 2d 494, 497 (E.D. La. 2003), was an attorney from the Freedom of Information–Privacy Acts Section, Records Management Division at FBI Headquarters who lacked personal knowledge to properly invoke certain FOIA exemptions because he had no involvement in the underlying FBI murder investigation or knowledge of any arrangements made with a confidential source.

[3] At oral argument, Plaintiffs insisted that even though the memo reflects law enforcement activity, the FBI was nonetheless required to state in the memo *what* the law enforcement purpose was, i.e., ensuring public safety around the Halliburton shareholder meeting. Plaintiffs could point to no authority for this remarkable proposition because there is none to be found. The Privacy Act describes what the government can document with respect to an individual's exercise of his or her First Amendment rights, but it does not proscribe that the government must identify in writing the law enforcement purpose behind every document it prepares.

9

1 anticipated and to ensure the safety of the public at those events." (Dkt. No. 119 at 11:15-17
2 (emphasis in original).) Not so. While there are certainly circumstances under which the FBI
3 might overreach the necessary scope of its responsibility to ensure public safety, Plaintiffs have
4 not shown that the bare recording of the name of websites which have included information
5 regarding the Halliburton shareholder meeting was not a lawful law enforcement activity.
6 Notably, Plaintiffs have not argued that the FBI conducted any surveillance of Antiwar.com or *any*
7 of the other websites listed or any individuals associated with those websites. At oral argument,
8 Plaintiffs suggested that the Privacy Act claim would *not* have arisen had the FBI done just that
9 and documented *what* Antiwar.com and the other websites said; that is, that the FBI could have
10 avoided running afoul of the Privacy Act if it had described what Antiwar.com said about the
11 shareholder meeting rather than merely listing Antiwar.com as a website that said something about
12 the shareholder meeting. The Court is not persuaded.

Here, the FBI, as part of its collaboration with local law enforcement, assessed any public safety issues associated with the Halliburton's annual shareholder meeting in light of activity that had occurred at prior meetings and in that process talked to a third-party who identified Antiwar.com as one of many websites that included information regarding the meeting. Information as to how broadly information regarding the meeting was shared, and how it was shared, is relevant to determining what law enforcement might expect to occur at the meeting and how it should prepare in advance. Indeed, it defies logic to expect law enforcement to prepare to protect public safety without obtaining information that allows them to anticipate what might happen. But there is no evidence that the FBI surveilled Antiwar.com or anyone else in connection with the preparation of the memo. The FBI's investigation as documented in the April 2006 Memo falls squarely within the authorized law enforcement activity exception to (e)(7). No other inference is reasonable from the record.

Plaintiffs' insistence that the law enforcement activity documented in the April 2006 Memo was not "authorized" is likewise unavailing. Plaintiffs rely on language from the FBI's Domestic Investigation and Operations Guide which notes that all investigative activity must be for an authorized national security, criminal or foreign intelligence collection purpose, and may

10

not be based solely on the exercise of First Amendment activities. (Dkt. No. 117-3 at 11, 18.) But the manual also states that the law does not preclude the FBI from observing and collecting any forms of protected speech and considering its content so long as those activities are for valid law enforcement or national security purposes "such as providing assistance to other agencies." (*Id*. at 18.) The memo here was prepared as part of the FBI's collaboration with local law enforcement. The Court is not in a position to parse the way in which the FBI collaborated with local law enforcement and conducted its assessment of the public safety risks involved. Just as the Court noted in its prior order rejecting Plaintiff's Privacy Act claims, "if the investigation itself is pertinent to an authorized law enforcement activity, the Privacy Act does not regulate what can be done in the course of that investigation or how that authorized investigation may be documented." (Dkt. No. 90 at 23:16-19.)

Indeed, "the legitimate investigation and surveillance of suspected criminals and civil offenders inevitably involves observation and recording of the actions of innocent people, sometimes when those people are exercising their First Amendment rights." *MacPherson*, 803 F.2d at 484 (internal citation and quotation marks omitted). "Blanket prohibition of such surveillance and recording unless the agency was investigating a specific offense or a specific person could thwart agency investigations and seriously undermine agency enforcement operations." *Id*. Plaintiffs have not identified any evidence that supports a reasonable inference that the April 2006 Memo represents anything more than the type of "incidental surveillance" which the Ninth Circuit has held is authorized because to hold otherwise "could thwart agency investigations and seriously undermine agency enforcement operations." *Id*.

On the record before the Court every reasonable trier of fact would have to find that the April 2006 Memo, including its mention of Antiwar.com, was prepared for a law enforcement purpose. Plaintiffs' motion for summary judgment on their remaining 552(7) claim is DENIED and Defendant's cross-motion is GRANTED.

## CONCLUSION

For the reasons discussed above, the FBI's motion for summary judgment is GRANTED and Plaintiffs' cross-motion is DENIED.

11

This Order disposes of Docket No. 114.

**IT IS SO ORDERED.**

Dated: January 12, 2018

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge
